UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ANDREA HERRING, | : | JURY DEMAND |
|---|---|---|
| Plaintiff | : | NO._____ |
| vs. | : | |
| SCI TENNESSEE FUNERAL SERVICES, LLC D/B/A EAST LAWN MEMORIAL PARK AND EAST LAWN FUNERAL HOME | : | |
| Defendant | : | |

## COMPLAINT

Plaintiff sues Defendant and shows the Court as follows:

### I. NATURE OF PROCEEDING AND JURISDICTIONAL BASIS

1. This is a proceeding alleging sex discrimination/harassment and retaliation. The jurisdiction of this Court is invoked pursuant to federal statutes prohibiting discrimination and retaliation and providing for back pay and benefits due Plaintiff; for injunctive relief requiring Defendant's re-employment of Plaintiff; for compensatory damages; for damages for humiliation and embarrassment; prejudgment interest and attorney fees; and for such additional damages as may be necessary to effectuate the purposes of the 42 U.S.C. §2000, *et seq.*

2. This is an action to redress the deprivation of rights secured to the Plaintiff under Title VII of the Civil Rights Act of 1964. Thus, this Court is vested with original jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(B).

1

## II. THE PARTIES

4. Plaintiff is a female resident of Chattanooga, Hamilton County, Tennessee.

5. Defendant SCI Tennessee Funeral Services, LLC ("SCI") d/b/a East Lawn Memorial Park and East Lawn Funeral Home employs personnel in the Eastern District of Tennessee. Defendant's operations are sufficient to classify Defendant as an "employer" within the meaning of 42 U.S.C. §2000(e), *et seq*.

## III. FACTUAL BASES OF PLAINTIFF'S CLAIMS

6. From November 19, 2009 until November 6, 2013, Plaintiff was employed, first as an Administrator, and then as Family Service Counselor at East Lawn Funeral Home and East Lawn Memorial Park in Sullivan County, Tennessee.

7. Prior to her protected activities, Plaintiff received both merit based raises and sales recognition from Defendant.

8. During her employment, Mr. Tim Stinnet, a Funeral Director with SCI, made inappropriate, gender-based comments to and about Plaintiff, touched Plaintiff in an offensive manner, and invaded her privacy.

9. Plaintiff made it clear that this behavior was unwelcome.

10. For example, while Plaintiff was bent down, Mr. Stinnet came up behind her and rubbed the shoe against her buttocks. Plaintiff did not welcome this and indeed protested it.

11. After that, Mr. Stinnet continued to make inappropriate, gender-based comments to Plaintiff and continued the additional inappropriate activities.

12. For example, Mr. Stinnet also showed Plaintiff nude pictures on his telephone.

13. Another incident of harassment involved Mr. Stinnet passing gas in Plaintiff's office and shutting the door to ensure the area retained a foul odor.

2

14. Moreover, Mr. Stinnet made jokes to Plaintiff that were sexual in nature.

15. Furthermore, during two separate incidents, Mr. Stinnet harassed the Plaintiff by unlocking a bathroom door and entering it with knowledge that Plaintiff was inside. During the second instance, Plaintiff was changing clothes and another SCI employee cautioned Mr. Stinnet against unlocking the bathroom door and entering it. Nonetheless, he entered and smiled.

16. Plaintiff complained about Mr. Stinnet's harassing activities to her immediate supervisor, Vickie Bryant, and the General Manager, Susie Mazolic, to no avail.

17. Upon information and belief, Mr. Stinnet and Susie Mazolic were friends and socialized outside of work.

18. Following Plaintiff's complaint to her supervisors regarding Mr. Stinnet's harassing activities, Plaintiff was treated in a different and negative manner at work. Further, it appeared that her complaints were ignored.

19. As a result, Plaintiff complained about Mr. Stinnet's sexual harassment to SCI's District Manager, John Fredrickson, and SCI's Human Resources representative, Chuck Gibson.

20. Plaintiff informed Mr. Fredrickson and Mr. Gibson that Mr. Stinnet made inappropriate comments to her.

21. Mr. Stinnet's harassment failed to cease after these complaints.

22. Indeed, after complaining to Mr. Fredrickson and Mr. Gibson, Plaintiff received a sexually explicit cartoon via text from Mr. Stinnet. The cartoon was offensive to Plaintiff's gender.

23. Plaintiff immediately reported the offensive text to Ms. Bryant and Mr. Fredrickson. In response, Mr. Fredrickson indicated that they had discussed her complaints with Mr. Stinnet, and he denied all of them. They seemed to indicate that the investigation was thus

3

Case 2:15-cv-00280-JRG-MCLC   Document 1   Filed 08/25/15   Page 3 of 7   PageID #: 3

concluded. They suggested that perhaps she consider a different, less desirable job for the company. The less desirable job would have involved less office work but also would have involved less desirable duties (cold calling) and commissions.

24. Immediately after that, Plaintiff was written up for insubordination and was told that she had a bad attitude. While being written up, Ms. Mazolic said she could not trust Plaintiff. Plaintiff was instructed by Ms. Mazolic to figure out if she wanted to work there and that she should leave. The meeting was very contentious and Plaintiff was berated.

25. As a result, Plaintiff developed a terrible stomach ache and sought medical treatment. She was instructed by her physician to take a short period of time off from work. When Plaintiff presented the note to Ms. Mazolic and Ms. Bryant, she was treated with hostility.

26. Following her complaints regarding Mr. Stinnett's discriminatory and harassing conduct, Plaintiff was subjected to other forms of retaliation as well. For example, management quit allowing Plaintiff to take home her laptop computer, which hampered her ability to achieve sales. They also said things about her performance that were untrue and nitpicked her performance. They gave her the cold shoulder and did not communicate with her about work matters.

27. After Plaintiff's one-week medical leave, Plaintiff attempted to return and nobody at the office would speak to her.

28. On October 21, 2013, Plaintiff sent John Fredrickson an email complaining about the continued hostile work environment and retaliation. She received no meaningful response.

29. On October 31, 2013, Plaintiff filed a charge of discrimination with the EEOC, alleging sexual discrimination and retaliation.

4

30. Shortly after that, on November 6, 2013, Plaintiff was called in for a meeting and was told she was being terminated. She was not given any reason, and the Separation Notice given to her was blank.

31. Under the doctrine of respondeat superior, Defendant is liable for the actions of its agents.

32. The individuals participating in the retaliation described herein were all individuals with the ability to alter and affect the terms and conditions of Plaintiff's employment. In the alternative, they were individuals who could influence others in a position to hire and fire and thus the company is liable for their actions under the "cat's paw" theory of liability.

33. As a result of SCI's discriminatory and retaliatory treatment, Plaintiff has suffered damages.

34. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on October 31, 2013, bearing charge number 494-214-00179, and then amended her complaint on November 7, 2013, bearing charge number 494-2014-00233.

35. Plaintiff received notice of a right to sue from the Equal Employment Opportunity Commission on June 4, 2015. This Complaint is timely filed.

### IV. PLAINTIFF'S CLAIMS

36. Plaintiff was discriminated against and harassed by the Defendant on the basis of her gender in violation of 42 U.S.C. § 2000(e), *et seq*.

37. Plaintiff was subsequently retaliated against by Defendant for complaining about the gender discrimination and harassment in violation of 42 U.S.C. § 2000(e), *et seq*.

38. Additionally, Plaintiff faced a hostile work environment on the basis of her gender and protected activity in violation of 42 U.S.C. § 2000(e), *et seq*.

39. Plaintiff opposed a practice and aided in the investigation of a practice declared discriminatory by 42 U.S.C. § 2000(e), *et seq*. In response, Plaintiff faced retaliation as a result in violation of 42 U.S.C. § 2000(e), *et seq*.

## V. DAMAGES

40. As a result of the wrongful action of Defendant in discriminating against and terminating Plaintiff, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff lost and will continue to lose salary, opportunities and advancement, and various employee benefits, which she would have earned had she been allowed to continue in her employment with Defendant. In addition to the actual and financial loss Plaintiff has sustained, she has suffered great mental anguish resulting from the embarrassment and humiliation, which she experienced because of Defendant's actions.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That upon the hearing of this cause Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits, which she has lost from the date of Defendant's discriminatory action;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal conditions imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement.

6

Case 2:15-cv-00280-JRG-MCLC Document 1 Filed 08/25/15 Page 6 of 7 PageID #: 6

d. That Plaintiff be awarded additional compensatory damages, including damages for humiliation and embarrassment, and emotional distress, as are allowed pursuant to the provisions of 42 U.S.C. §2000, *et seq.*;

e. That Plaintiff be awarded attorney fees and such other and further relief as the Court deems proper pursuant to 42 U.S.C. §2000, *et seq.*

f. That Plaintiff be awarded all compensatory and punitive damages as the Court deems proper pursuant to 42 U.S.C. §2000, *et seq.*; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury.

BURNETTE, DOBSON & PINCHAK

By: _____
Donna J. Mikel, #020777
Attorney for Plaintiff
711 Cherry Street
Chattanooga, TN 37402
Phone: (423) 266-2121
Fax: (423) 266-3324