UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ANDREA HERRING,

    *Plaintiff,*    )
             )
v.           )  No. 2:15-CV-00280
             )
SCI TENNESSEE FUNERAL SERVICES, LLC )
d/b/a EAST LAWN MEMORIAL PARK AND )
EAST LAWN FUNERAL HOME   )
             )
    *Defendant*.    )

**REPORT AND RECOMMENDATION**

   This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order of Reference [Doc. 187]. Before the Court is Plaintiff's counsels' motion for Attorneys' Fees and Litigation Costs [Doc. 169]. Defendant has objected to Plaintiff's motion [Doc. 179]. The matter is now ripe for resolution.

**I.  BACKGROUND**

   On August 25, 2015, Plaintiff filed her complaint in this Court, alleging that Defendant discriminated against her on the basis of her gender, retaliated against her for complaining about the gender discrimination, and maintained a hostile work environment, all in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. [Doc. 1, ¶¶ 6-24]. She alleged that a funeral director, who was an employee of Defendant, made gender-based comments to and about her, touched her in an offensive manner and invaded her privacy [*Id.* at ¶ 8]. She alleged that this funeral director came up behind her, while she had stooped over, and rubbed a shoe against her buttocks; that he showed her nude photos on his telephone; "pass[ed] gas in [her] office and shut[] the door to ensure the area retained the foul odor," [*Id.* at ¶ 13]; made sexual jokes to her; harassed her by unlocking the

bathroom door while she was using the bathroom and entering in the bathroom while she was changing clothes. [*Id.* at ¶ 8-15]. Although she complained of his behavior, Defendant took no corrective action. After she complained, the funeral director sent her a sexually explicit cartoon via text from his phone [*Id.* at ¶ 22]. Notwithstanding this particular employee's behavior, it was the Plaintiff whom Defendant disciplined for "insubordination" and for having a "bad attitude." [*Id.* at ¶ 24]. After Plaintiff complained, the entire work environment changed. Defendant treated her differently, prevented her from taking her laptop computer home to work and stopped communicating with her about work matters. When Plaintiff returned from medical leave, no one in the office would speak with her. She complained again but nothing was done. On October 21, 2013, she filed a complaint with the EEOC. On November 6, 2013, Defendant terminated her employment.

Initially, Plaintiff filed her Complaint in Chattanooga, Tennessee. On September 15, 2015, Defendant moved the Court to transfer the case to the Greeneville Division. On October 16, 2015, the Court granted Defendant's motion and transferred the case [Doc. 12]. On December 23, 2015, Plaintiff served written discovery upon Defendant. On March 11, 2016, Plaintiff served a second request for production of documents [Doc. 20, pg. 2]. On February 10, 2016, Defendant served written discovery upon Plaintiff. On June 10, 2016, the parties filed a joint motion to extend discovery. In the motion, they noted that they needed "to complete several remaining depositions, including those of non-party witnesses, one of which is located out of state, and to resolve current discovery disputes…." [Doc. 22].

On June 14, 2016, Defendant filed a formal objection to the expert testimony of Dr. Scott May, who was Plaintiff's treating physician [Doc. 35]. Because Plaintiff opted not to use Dr. May as an expert witness, the Court found Defendant's motion moot [Doc. 37]. On October 11, 2016,

Defendant filed a detailed motion for summary judgment and accompanying memorandum [Doc. 38]. Plaintiff responded with a 24 page memorandum and 21 exhibits totaling 233 pages [Doc 45]. She also responded to 31 paragraphs contained in Defendant's Statement of Material Fact and added to those another 107, totaling 138 paragraphs [Doc. 46].

After failing to resolve the case in mediation, Defendant filed 12 motions *in limine* [Docs. 58-69]. Plaintiff filed a motion *in limine*, objecting to 15 exhibits offered by Defendant, the admission of evidence of a prior law suit she had filed in the mid-2000s, and certain "generic" exhibits filed by Defendant. [Doc. 70]. Plaintiff also filed detailed responses to each of Defendant's motions *in limine* [Docs. 73, 75, 82-89, 94]. The Court held oral argument on all the motions on April 24, 2017 [Doc. 96]. The Court then entered a series of orders [Docs. 97-109] addressing each of the parties' motions. On May 15, 2017, the District Court granted in part and denied in part Defendant's motion for summary judgment [Doc. 110]. On May 16, 2017, Defendant objected to the Magistrate Judge's order [Docs. 112-13] to which Plaintiff filed Responses [Docs. 114-15]. The District Court overruled Defendant's objections [Doc. 117]. On October 27, 2017, Plaintiff and Defendant filed a detailed Pretrial Order [Doc. 118]. On November 10, 2017, Plaintiff proposed 27 jury instructions and filed an Exhibit List that identified 75 different items for trial [Docs. 123, 142]. Defendant also filed a Witness and Exhibit List, identifying five witnesses and 48 exhibits [Doc.145]. Plaintiff designated portions of the depositions of John Frederickson and Charles Gibson and Plaintiff identified six witnesses for trial [Docs. 149, 150].

On January 30, 2018, the jury trial began and lasted four days [Docs. 152-53]. Seven witnesses testified and over 50 exhibits were introduced. On February 1, 2018, the jury returned a verdict for Plaintiff, awarding her $50,000.00 on her sexual harassment claim, $100,000.00 in

back pay and $150,000.00 in damages for emotional pain and mental anguish based on its finding that Defendant had retaliated against her. Because it also found that Defendant's conduct warranted a punitive damage award, [Doc. 156], the jury reconvened on February 2, 2018, and heard evidence regarding punitive damages. After deliberations, it awarded Plaintiff $1,750,000.00 in punitive damages [Doc. 159]. As a result of the verdict, a judgment in the amount of $2,050,000.00 was entered [Doc. 160].

After the trial, the Court ordered the parties to brief whether reinstatement would be an appropriate remedy [Doc. 163]. Plaintiff complied [Doc. 165] and additionally filed a motion for prejudgment interest [Doc. 166]. Defendant then filed a motion for a new trial and remittitur and a 19 page memorandum in support [Doc. 172-73]. In this motion, Defendant argued for a remittitur in the amount of $100,000.00 in back pay and $200,000.00 in remaining damages pursuant to the statutory caps of 42 U.S.C. § 1981. Plaintiff filed a 21 page response with five exhibits [Doc. 180]. That motion remains pending before the District Court.

## II.   POSITION OF THE PARTIES

Plaintiff requests a lodestar award of $252,099.60 in attorneys' fees and an enhancement of 1.25% for a total fee award of $315,125.50. She also requests litigation costs in the amount of $6,980.49 [Doc. 171]. Plaintiff asserts that she was the prevailing party in her civil rights case, which was brought pursuant to Title VII of the Civil Rights Act, which provides for reasonable attorneys' fees and costs to be awarded to the prevailing party. See to 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988.

In support of her motion, Plaintiff identifies four attorneys who worked on the case: Ms. Donna Mikel, Esq., Mr. Doug Hamill, Esq., Mr. Robert Wheeler, Esq., and Mr. Joel Cohen, Esq. For Ms. Mikel, Plaintiff requests an hourly rate of $400.00. In support of that rate, she indicates

attorney Mikel has been a partner in Burnette, Dobson & Pinchak since 2008, has an AV Martindale Hubbell rating, is a member of the National Employment Lawyers Association, and a former member of the Tennessee Employment Lawyers Association. She has tried 12 employment cases to juries. She also details her prior attorney fee awards in other cases. She expended approximately 385 hours in the case.[1]

For attorney Robert Wheeler, she asks for an hourly rate of $225.00. Mr. Robert Wheeler graduated from University of Tennessee College of Law in May 2015, and passed the bar that same year. He began working on this case in August 2015 and expended approximately 140 hours on the case. For attorney Doug Hamill, Plaintiff is requesting an hourly rate of $375.00. Mr. Douglas Hamill obtained his Tennessee law license in 2003 and has over 14 years of experience. His practice has been focused on employment law. He has been a partner in Burnette, Dobson & Pinchak firm since 2008.

For her paralegal, Ms. Tammie Dickson, she requests an hourly rate of $125.00. She notes that Ms. Dickson has 24 years of experience and holds Bachelor of Science degree and is a member of the Tennessee Paralegal Association, National Association of Legal Assistants, and an associate member of the Tennessee Employment Lawyers Association. Ms. Dickson invested 82.3 hours in the case.

For Ms. Krista Guinn, she requests an hourly rate of $75.00 per hour. She has 20 years of experience and has an Associate Degree of Applied Science in Legal Assisting Technology/Paralegal Studies. Ms. Guinn invested 23.5 hours in the case.

---

[1] Plaintiff did not itemize the total number of hours worked for each particular attorney. Instead, the invoice only provided the specific itemized time for each task the attorney completed in chronological order. The Court backed into the hours attorney Mikel expended. Given that the billing program used exact minutes and not tenths of an hour, there is a slight difference in Mikel's fee calculation.

5

For attorney Joel Cohen, Plaintiff requests an hourly rate of $350.00. Mr. Joel Cohen is an attorney licensed in both Texas and Tennessee. His practice is based out of Dallas, Texas, and he has been licensed in Texas since 2005 [Doc. 170-12, pg. 3]. He indicates in his declaration that he estimates that he has expended over 30 hours on this case. Plaintiff request the Court approve $10,500.00 for his attorney's fees.

In addition to the lodestar fee, she requests an enhancement based on the time and labor expended and complexity and novelty of the issues; that her fees were contingent on a favorable outcome; and that she had a successful outcome on all her claims. She argues for the application of a 1.25 multiplier to the lodestar amount. Plaintiff argues that "the extraordinary nature of the success achieved justifies an enhanced fee." [Doc. 171, pg. 19].

For litigation costs, she requests $6,980.49 in addition to the Bill of Costs she has already filed. This total is based on $1,381.62 in mileage expenses; $2,670.25 in mediation fees; $404.61 in expenses associated with the Tallahassee deposition; $89.01 in miscellaneous expenses; and $2,435.00 in lodging and meal expenses during the trial.

In contrast, Defendant argues the hourly rates are unreasonable. Defendant notes that the hourly rate for Defendant's attorney who tried the case was only $260.00 and the hourly rate for the partner handling the case was only $375.00, less than what Plaintiff is requesting for her counsel [Doc. 179, pg. 2]. Defendant notes that with the lone exception of the $400.00 hourly rate approved by the Court for attorney Mikel's services, her court approved hourly rates have ranged between $250.00 and $295.00. It also claims that the rates requested by Plaintiff are not customary in East Tennessee, and that she has not produced her contract with her attorney.

Defendant also argues that the requested fee of $252,099.60 is "grossly out of proportion with the amount of money Plaintiff is to receive." [*Id.*]. Defendant claims that based on certain

statutory caps, Plaintiff is only entitled to receive $300,000.00. Approving a $252,099.60 fee would be approving a fee that was 84% of the total award, which, in the Defendant's opinion, would amount to an unreasonable fee. Defendant notes that a contingency fee set at 33% would result in an attorney's fee award of only $100,000.00. Regarding the amount involved and results obtained, Defendant argues that her contingency fee should be based on what is actually received, not what the judgment is.

Defendant also takes issue with the number of hours billed. While Defendant's objection here is more of a broad-brush criticism of the hours expended, it does identify a few specifics. First, it claims implicitly that the time where Plaintiff's counsel "worked with client on Facebook" on May 12, 2016 should be excluded.[2] Second, it notes that Plaintiff had two attorneys in two depositions, the June 2, 2016, deposition where both attorney Mikel and Wheeler each billed 11 hours and 11 hours 10 minutes, respectively, and the January 19, 2018, deposition where each attorney billed nine hours [Doc. 170-10, pg. 17, 32]. Third, it argues that the Court should exclude the time attorney Wheeler billed to pick up a cell phone on August 25, 2016.[3] Finally, Defendant complains that the invoice is "peppered with many interoffice conferences." [Doc. 179, pg. 4].

Generally, Defendant notes that the case was not so novel or difficult that would justify the 750 hours spent on this case, that this time was "excessive." [Doc. 179, pg. 5]. It claims that Plaintiff has not shown her counsel was precluded from other employment and that the "undesirability" of the case does not impact the fee in this instance as "Plaintiff's attorney will not

---

2    For this time entry, Plaintiff's counsel billed 30 minutes for "work with client on Facebook and supplemental requests; conference with Robert Wheeler regarding the same." [Doc. 170-10, pg. 16].

3    In this entry, attorney Wheeler billed 30 minutes for a "[t]rip to Erlanger to pick up cell phone; office conference with Donna Mikel." [Doc. 170-10, pg. 20].

7

face hardship in their communities in this #MeToo era….."  [Doc. 179, pg. 8].

## III.  ANALYSIS

The first issue in an attorneys' fee case is for the Court to determine whether any award is in order, and in this case, that is the easiest issue to resolve.  Defendant does not dispute that Plaintiff is entitled to attorneys' fees, and the Court finds that she is.  Plaintiff sued under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and prevailed at trial.  42 U.S.C. §§ 2000e-5(k) and 1988(b) authorize a court to award "a reasonable attorney's fee" to a prevailing party in an action to enforce the provisions of Title VII.  She succeeded in "remedying a civil rights violation" and "serv[ed] as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011) (internal quotation marks omitted).

The real issue is determining whether the requested attorneys' fees is reasonable.  A reasonable attorney's fee is calculated by the lodestar method.  *The Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016)(citations omitted).  The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The lodestar method is used regardless of whether Plaintiff and her counsel had a contingent or hourly fee contract. [4]  As an initial matter, the Court is unpersuaded by Defendant's argument that the fee is unreasonable in light of what will actually be recovered.  The Court's focus is on whether the proposed fee is reasonable not in comparison to what is recovered.  Indeed, [i]n the civil rights

---

[4]    See *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002)("Thus, the lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation").

8

area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir.1995). See also *Blanchard v. Bergeron*, 489 U.S. 87, 93–94 (1989)("The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way….").

The following chart summarizes Plaintiff's request[5] for fees:

| Attorney/Paralegal | Hourly Rate Requested | Total Hours Expended | Total Fee |
|---|---|---|---|
| Donna Mikel | $400.00 | 385.38 | $154,153.35 |
| Robert Wheeler | $225.00 | 141.761 | $31,896.25 |
| Douglas Hamill | $375.00 | 116.0 | $43,500.00 |
| Joel Cohen | $350.00 | 30.0 | $10,500.00 |
| Tammy Dickson (paralegal) | $125.00 | 82.3 | $10,287.50 |
| Krista Guinn | $75.00 | 23.5 | $1,762.50 |
| **Total** | | | **$252,099.60** |

## A.  A Reasonable Hourly Rate

Defendant argues that hourly rates requested by Plaintiff are unreasonable. Defendant's attorney at trial filed a declaration that his hourly rate was $260.00 and the hourly rate of the partner handling the case was $375.00.  As noted, a "reasonable" rate is usually the prevailing market rate, or the rate that lawyers of comparable skill and experience can reasonably expect to command in the court's jurisdiction or venue. *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  It should be at a rate "necessary to cause competent legal counsel to perform the work required." *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 966 (E.D. Tenn. 2017).  The Sixth Circuit has identified a dozen factors to assist trial courts in

---

[5]  Plaintiff's counsel's time entries are recorded in exact times and are not billed in six minute increments or the traditional .10 intervals.  Thus, the Court has rounded the hours expended to approximate the time expended in a format the Court typically uses.

determining the reasonableness of an hourly rate, as well as the number of hours worked:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The Court has considered all of these factors in arriving at what it has determined to be the prevailing market rate for the attorneys involved. The wide variety in lawyer experience complicates the hourly rate determination as an attorney with no experience should not be compensated at the same rate as an attorney with 15 years of experience.[6] This necessitates the Court set an hourly rate for each attorney involved in the case.

### 1. Attorney Donna Mikel

Defendant argues Plaintiff's requested hourly rate for attorney Mikel of $400.00 is unreasonable and argues she should not be paid "like attorneys in prestigious defense firms" [Doc. 179, pg. 2]. "The appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation." *Husted,* 831 F.3d at 715-16, citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). While the rate defense firms charge to defend these type of cases is part of the marketplace and certainly a consideration, the Supreme Court has "consistently looked to the marketplace as our guide to what is reasonable." *Missouri v. Jenkins*, 491 U.S. 279,

---

[6] In *Blum*, the Supreme Court noted that the market rates take into account variation in the skill and experience of the attorneys. *Blum v. Stenson*, 465 U.S. 886, 898 (1984)("[T]he special skill and experience of counsel should be reflected in the reasonableness of the hourly rates).

285 (1989).

In support of her request for a $400.00 hourly rate, Plaintiff has submitted the declaration of Jennifer Morton, who has over 25 years of experience in litigation in state and federal courts [Doc. 170-14, *Declaration of Attorney Jennifer Morton,* ¶ 3]. She indicates that "the prevailing hourly rates charged by attorneys who practice in federal and state courts in East Tennessee representing employees in discrimination cases … [are] between $200 per hour for recent graduates and $450 per hour for more experienced attorneys." [*Id.* at ¶ 6]. She also indicates that attorney Mikel is "highly regarded as [one] of the most skilled attorneys in the Chattanooga area practicing in the area of employment law." [*Id.* at ¶ 8]. Plaintiff has also submitted the declaration of attorney Hugh Moore, who has practiced law in the Chattanooga area since 1970. [Doc. 170-15, ¶ 1]. Based on his experience with attorney Mikel, and based on his knowledge obtained as a mediator, he stated it was his "opinion that a rate of $400 per hour for Attorney Mikel … is comparable to rates charged in the community for this type of work." [*Id.* at ¶ 7]. Plaintiff also filed the declaration of attorney Justin Gilbert, who has been practicing law for 23 years in the Chattanooga area [Doc. 170-13, ¶ 1]. He indicated he believed a $400 per hour rate was reasonable. He also opined that an enhancement of 1.25% was "*necessary* in order to attract competent counsel to accept the contingent degree of risk exemplified by this particularly arduous case." [*Id.* at ¶ 10](emphasis added).

Attorney Mikel has nearly 18 years of experience and concentrates her practice in the field of civil rights and employment law. Plaintiff cites to a prior court approved hourly rate of $400.00 for attorney Mikel as support for a $400.00 rate in this case. See *Tami Long v. Covenant Transport, Inc.*, 1:15-cv-00278 (ECF No. 51 and 56). The Court will note, however, that her fee in that case was not contested, but was awarded by agreement of the parties in the class action suit. Attorney

11

Mikel indicates in her declaration that other courts have approved hourly rates for her services from $250.00 to $295.00 per hour. [Doc. 170-10, pg. 6].

Plaintiff has also attached a table that identified a nationwide rate structure for associates in 2018. This table indicates that the billing rate for first year associate is $485.00 and continuing up to $785.00 per hour for attorneys with eight years or more experience. [Doc. 171, pg. 6]. Plaintiff also cites the *Laffey* Matrix,[7] which she attached as Exhibit 3. The *Laffey* Matrix suggests an hourly rate for attorney Mikel of $717.00 [Doc. 171, pg. 8].

A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. & Cas. Ins*., 436 F.App'x. 496, 499 (6th Cir. 2011). The Court has the benefit of such a fee determination made less than eight months ago. In September 2017, Magistrate Judge Bruce Guyton addressed a petition for attorney's fees in a case in which a plaintiff prevailed in her claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* In his Report and Recommendation, which was adopted by the District Court, he addressed the prevailing market rate for attorneys handling litigation under the ADA, and he recommended that the District Court set the lead attorney's hourly rate at $350.00. *EEOC v. Dolgencorp, LLC,* 277 F.Supp.3d 932, 966 (E.D. Tenn. September 28, 2017).[8] In that case, Plaintiff requested an hourly rate of $400.00 as attorney Mikel has done in this case.

---

[7] The *Laffey* matrix was established initially in 1983 by the U.S. District Court for the District of Columbia and has been used as a tool for assessing presumptively reasonable local market rates for attorneys based on years of legal experience in the District of Columbia. *Laffey v. Northwest Airlines,* 572 F.Supp. 354 (D.D.C. 1983). It is now a product of the Civil Division of the United States attorney's office for the District of Columbia.

[8] Incidentally, attorney Jennifer Morton, Esq., was the attorney involved in that case. Notably, in that case, the total recovery was $277,565.44, and the attorneys' fee award was $445,322.25. *Id.*, No. 3:14-cv-00441 [Doc. 149].

12

There is no question attorney Mikel has significant experience in this area of the law. Three attorneys have submitted declarations indicating she enjoys a great reputation in the legal community and provides quality representation to her clients. Her hourly rate should reflect her skill and experience. She has 18 years of experience in state and federal courts, and is a member of numerous professional organizations focused on employment law. Moreover, the results she obtained speak to her skill.

The Court has considered all of the filings and previous awards for attorney's fees in this district. The Court has also considered the *Laffey* matrix. [Doc. 171, pg. 7[]. While the Court has considered the matrix, the Court does not find that it provides much insight into what a reasonable fee would be in East Tennessee. See *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010)("It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capitol"); see also *Tikan v. Asset Acceptance, LLC,* No. 13-12173, 2016 WL 1212641, at *3 (E.D. Mich. Feb. 12, 2016), *report and recommendation adopted,* No. 13-12173, 2016 WL 1182771 (E.D. Mich. Mar. 28, 2016)(*Laffey* matrix is of "limited value anywhere outside the District of Columbia").

The Court has also considered that on one occasion a court awarded her an attorney's fee of $400.00 per hour. See *Tami Long v. Covenant Transp. Inc.,* No. 1:15-cv-00278 [Docs. 40, 56]. The Court does not find that award insightful because it was not contested by the parties and was part of a larger settlement agreement in a class action case. The Court also does not place controlling significance on the fact that the hourly rate for the senior partner handling this case was $375.00. The Sixth Circuit noted in *Van Horn,* that "while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit holds that 'reasonable' fees need not be 'liberal' fees, and that '[s]uch fees are different from the prices

13

charged to well-to-do clients by the most noted lawyers and renowned firms in a region."

After consideration of the record, the Court recommends that the Court set the hourly rate for attorney Mikel at $350.00. This is consistent with her years of experience in this area of the law and accurately reflects the prevailing market rate for these legal services in this division.

### 2. Attorney Doug Hamill

Plaintiff requests that attorney Doug Hamill's hourly rate be set at $375.00. Attorney Hamill was licensed to practice law in 2003 and has 15 years of experience. His practice has focused on employment law, and he has been a partner at Burnette, Dobson & Pinchak since 2008. Other courts have approved hourly rates of $275.00 and $285.00. He has expended 116 hours on the case, and requests an attorney's fee of $43,500.00. [Doc. 170-11, pg. 4].

Attorney Hamill co-chaired this case along with attorney Mikel. However, he does not have the years of experience as Mikel and his hourly rate should reflect that. In *Dolgencorp*, Magistrate Judge Guyton also examined the market rate for attorneys and noted that a "billable hourly rate of $250-$350 is within a reasonable range in the Knoxville, Tennessee market for attorneys with approximately 10 years of experience who are accomplished in their primary area of practice." See *EEOC v. Dolgencorp, LLC*, No. 3:14-cv-00441 (E.D.Tenn. August 7, 2017)[Doc. 214, pg. 13]. Judge Guyton recommended the District Court approve an hourly rate for an attorney with ten years of experience of $250.00.

In this case, attorney Hamill not only has 15 years of experience but also substantially contributed at the trial of this case. However, he was not lead counsel and the difference in his experience from attorney Mikel should be reflected in his hourly rate. The Court recommends that his hourly rate be set at $300.00 which reflects not only his greater experience than Magistrate Judge Guyton faced in *Dolgencorp* but also reflects the skill he brought to this case.

14

### 3. Attorney Robert Wheeler

Plaintiff requests an hourly rate of $225.00 be set for attorney Robert Wheeler. Mr. Wheeler graduated from University of Tennessee in 2015 and passed the bar that same year. It is not clear when exactly in 2015 he was licensed, but he began working on this case in August 2015. Thus, he had no experience when he began working on this case.

Regarding attorney Wheeler's rate, the Court must set a reasonable hourly rate for an attorney with no experience. Having considered the pleadings in this case and the market rate in the community, the Court does not recommend setting the hourly rate at $225.00 per hour for attorney Wheeler. The amount is unreasonable in light of the hourly rates approved for attorneys with 10 years of experience. *Id.* Moreover, the Court finds the hourly rate of $225.00 unreasonable considering the hourly rates approved for attorney Mikel in other cases. Court approved hourly rates for her ranging from $250.00 to $295.00 in 2013 when she had 13 years of experience [Doc. 170-6]. Rather, considering the pleadings and the Court's understanding of prevailing rates in the legal community, the Court recommends the District Court approve an hourly rate of $175.00 for an attorney with no experience.[9]

### 4. Tammy Dickson

Plaintiff requests fees for the work Tammy Dickson performed in this case. Fees for paralegal services are proper. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008). Concerning Ms. Dickson, the Court notes that she has been a paralegal with Burnette, Dobson & Pinchak for more than 24 years, holds a Bachelor of Science degree and is a member of the

---

[9] As a side note, just for comparison purposes, this rate is higher than the current hourly rate of $140.00 for attorney work under the CJA Act, 18 U.S.C. § 3006A *et seq.* The Court also observes that the hourly rate for Tennessee court appointed criminal defense work *is* $40.00 and has been so since *1994.* The rate Tennessee pays its court-appointed attorneys is an outlier and clearly is outside the prevailing market rate for attorney work.

15

Tennessee Paralegal Association, National Association of Legal Assistants [Doc. 171, pg. 12]. Plaintiff requests an hourly rate of $125.00 per hour for paralegal services. Although Defendant has not filed a specific objection to this rate, the Court finds this to be too high for this venue. Again, the Court has the benefit of this issue being addressed before in this district. In 2016, in the Knoxville division, Magistrate Judge Guyton found that the paralegal rate of "$75.00 per hour is more appropriate." *Guevara v. Soto*, No. 3:15-CV-548-TAV-CCS, 2016 WL 8117955, at *3 (E.D. Tenn. Dec. 20, 2016), *report and recommendation adopted*, No. 3:15-CV-548-TAV-CCS, 2017 WL 401214 (E.D. Tenn. Jan. 30, 2017)(citations omitted). In *Burnett v. Burnett*, No. 3:13-CV-492, 2014 WL 1340058, at *3 (E.D. Tenn. Apr. 3, 2014), the court noted that $75.00 per hour is a "significant hourly rate for paralegal work." Interestingly, for comparison purposes, the district court in Nashville noted that "an hourly rate of $85 for work done by paralegals is reasonable for the Nashville market." *Carty v. Metro. Life Ins. Co.*, No. 3:15-CV-01186, 2017 WL 660680, at *7 (M.D. Tenn. Feb. 17, 2017).

The Court has considered all of the pleadings in this case and finds that $90.00 per hour is a reasonable fair market rate for paralegal services in the Greeneville division based on the number of years of experience Ms. Dickson possesses. Plaintiff has submitted a detailed itemization of the work Ms. Dickson performed on the case. A summary follows:

| Date | Description | Time |
|------|-------------|------|
| 1/23/18 | Reviewed exhibits | 3:24 |
| 1/24/18 | Prepare for trial; reviewed Defendant's exhibit list; reviewed transcript of Suzie Mozolic Deposition; office conference with Donna Mikel and Doug Hamill regarding witnesses and testimony. | 6:48 |
| 1/25/18 | Prepare for trial; locate and renumber Defendant's exhibits; revise two Defendant exhibit notebooks and copies for exhibit folders; office conference with Sheila Lively | 9:24 |
| 1/26/18 | Trial preparation; review depositions of Plaintiff and Fredrickson; review and comment on opening statement; | 7:24 |

16

| Date | Description | Time |
|------|-------------|------|
|  | office conference with client; office conference with Donna Mikel and Doug Hamill |  |
| 1/27/18 | Prepare for trial; continue review of Plaintiff's deposition; suggestions on trial questions; reviewed and made suggestions on voir dire; long prep session with client | 6:06 |
| 1/28/18 | Prepare for trial; work on trial exhibits and testimony of each witness; listing of exhibits by witness; finalize travel plans; organize all exhibits and deposition for travel to Greeneville; office conference with client, Donna Mikel and Doug Hamill | 5:06 |
| 1/29/18 | Travel to Greeneville; conference with witness; conference with client; prepare for trial; work on exhibits; meeting at courtroom regarding courtroom tech and prepare for working within the courtroom; trip to Walmart for cord for trial | 9:18 |
| 1/30/18 | Prepare for and attend trial; prepare exhibits and Plaintiff deposition for use at trial; evening preparation; prepare exhibits and depositions for second day of trial | 10:48 |
| 1/31/18 | Prepare for and attend trial; review Gibson deposition and assist in preparation for cross examination; work on exhibits for Gibson cross; reviewed jury charge; assist with draft of closing argument | 11:18 |
| 2/1/18 | Attend and assist in trial; research; review and prepare exhibits for closing; wait for deliberation; prepare for punitive damage phase | 9:48 |
| 2/2/18 | Prepare for punitive damage phase; attend trial; wait for deliberation | 2:54 |

The Court finds that the work performed is paralegal work and is recoverable.

**5.      Krista Guinn**

Plaintiff does not represent that Ms. Guinn is a paralegal as she does Ms. Dickson.  She

notes that Ms. Guinn has 20 years experience and has worked for the law firm for 10 years and has

an Associate Degree of Applied Science in "Legal Assisting Technology/Paralegal Studies."

Defendant has filed no specific objections to the time expended by Ms. Guinn.

The Supreme Court has noted that "purely clerical or secretarial tasks should not be billed

at a paralegal rate, regardless of who performs them."  *Missouri v. Jenkins,* 109 S.Ct. 1262, n. 10

(2009); *see also Osborne v. Nicholas Financial, Inc.*, 2015 WL 366126, at *1 (M.D. Tenn.

2015)(holding that, "fees cannot be recovered for purely clerical or secretarial tasks").  "[S]trictly

17

clerical tasks" are part of the overhead cost necessary to operate any law firm, and should not be compensated by a fee award. *Allison v. City of Lansing*, 2007 WL 2114726, at *1 (W.D.Mich.2007) (distinguishing "proofing, printing, and mailing" from "professional" tasks such as "editing and revising [an] appellate brief and cross-referencing to the appendix"); *Richards v. Johnson & Johnson*, No. 2:08-CV-279, 2010 WL 3219138, at *7 (E.D. Tenn. May 12, 2010), *report and recommendation adopted*, No. 2:08-CV-279, 2010 WL 3219133 (E.D. Tenn. Aug. 12, 2010).

The Court cannot say that the tasks performed by Ms. Guinn are purely clerical in nature. Here are the descriptions for Guinn:

| Date | Description | Time | Billed |
|------|-------------|------|--------|
| 3/6/2017 | Work on trial exhibits and notebooks | 2:15 | $168.75 |
| 3/7/2017 | Continue work on trial exhibits and notebooks | 2:45 | $206.25 |
| 3/8/2017 | Continue work on trial exhibits and notebooks | 2:30 | $187.50 |
| 3/9/2017 | Finish trial exhibits and send to opposing counsel for submission to the Court | 1:45 | $131.25 |
| 1/18/18 | Work on trial notebooks | :45 | $56.25 |
| 1/19/18 | Continue work on trial notebooks | 1:30 | $112.50 |
| 1/23/18 | Work on updating trial exhibits and notebooks | 2:30 | $187.50 |
| 1/24/18 | Complete trial exhibits; send to Court and opposing counsel | 1:15 | $93.75 |
| 1/25/18 | Work on jury list, jury labels, and jury chart | 4:30 | $337.50 |
| 1/26/18 | Complete jury labels and jury chart | 3:45 | $281.25 |

The total for Ms. Guinn's billing is $1,762.50. The Court recommends her rate and hours be approved.

## B. Reasonable Hours Expended

The Supreme Court has said that counsel is expected to exercise "billing judgment" *Hensley,* 461 U.S. at 434. The Court should examine the hours expended and "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" including "excessive, redundant, or otherwise unnecessary" work. *Id.*

18

Defendant argues that, generally, the number of hours Plaintiff's counsel expended was unreasonable. Defendant claims that this was not such a novel case that would justify the approximate 750 hours expended on the case. As noted in the background, *infra,* this case was contested at every stage and required a significant amount of attorney time as a result. It is not surprising, then, to the Court that Plaintiff's counsel expended the kind of hours on this case. Many of the hours were generated in response to Defendant's motions.

Turning to Defendant's specific objections, Defendant points out that Plaintiff's counsel billed for time in which he "worked with client on Facebook" on May 12, 2016; that Plaintiff had two attorneys attend depositions on June 6, 2016 and January 19, 2018; an attorney picked up a cell phone on August 25, 2016. Defendant further notes that the invoice "is peppered with many interoffice conferences." [Doc. 179, pg. 4].

It is not surprising to the Court that Plaintiff's counsel worked with Plaintiff "on Facebook." Defendant had a 13 Facebook posts it intended to use as exhibits at trial. Those exhibits were the subject of a motion *in limine*. [Doc. 71]. The Court found them to be irrelevant and excluded them [Doc. 109, pg. 5]. The Court is also not offended by the fact that two attorneys traveled to Johnson City, Tennessee, to take the deposition of John Fredrickson on June 6, 2016, and Vickie Bryant on January 19, 2018. There were a number of ways in which the parties could have reduced the costs associated with those depositions. One of those ways would be to change the location of the deposition. Defendant could have produced the witnesses in Chattanooga and most of those hours would have been avoided. Instead, Plaintiff's counsel had to travel to Johnson City, Tennessee. That two attorneys went is also not unusual in these type of cases. Plaintiff is not billing for a van load of lawyers; she is requesting fees for only two. Defendant also complains that attorney Wheeler billed 30 minutes for a trip to Erlanger to pick up a cell phone and a

19

conference with attorney Mikel.  The Court agrees that his time should be reduced by 30 minutes. Regarding the multiple conferencing entries, "[t]here is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project."  *Husted,* 831 F.3d at 704, quoting *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). Multiple-lawyer litigation is common and not inherently unreasonable.  *Husted*, 831 F.3d at 704. In reviewing the facts of this case, the Court cannot conclude these conferences were unreasonable. Plaintiff identified a number of different challenging factual issues that complicated the legal strategy of the case and would warrant the expenditure of such time.

The Court has reviewed the hours expended and finds that with the noted exception of 30 minutes for an attorney picking up a cell phone, the hours are otherwise reasonable.

## C.     Attorney Joel Cohen

The Court addresses attorney Joel Cohen's fee separately as he was not directly involved in the litigation here in the Eastern District. Instead, he filed the EEOC complaint on Plaintiff's behalf.  Plaintiff requests attorney Joel Cohen be paid an hourly rate of $350.00.  Mr. Cohen is an attorney from Dallas, Texas, but is licensed in Tennessee.  [Doc. 170-12, pg. 2-3].  He has been licensed since 2005 and indicates that he has expended over 30 hours on this case.

Concerning his hourly rate, the Court finds that $350.00 is not reasonable for the work he performed and given his years of experience.  He began working on this case in 2013 at a time when he had less than 10 years of experience.  The Court finds that considering the legal services Mr. Cohen rendered and his years of experience, the Court recommends setting his hourly compensation to the same rate as Judge Guyton recommended last year in considering an attorney with 10 years of experience, that is, a rate of $250.00 per hour.  In reaching this conclusion, the

20

Court has considered his declaration but does not find his request for $350.00 consistent with the market rate for attorney compensation for the kind of work he performed.

Concerning the hours expended, it is apparent he did not record his time contemporaneously. Instead, he recreated it at the end of this case. As a result, it is basically an estimate or his best guess of the time he spent with Plaintiff working on the case. To illustrate, he claimed he reviewed 33 emails and 55 texts and *estimated* that he averaged 5 minutes per email and text, arriving at a total of six hours and 40 minutes of time. He then *estimated* that he spent three hours at the initial consultation plus 10 hours of calls to client, which he considered to be "an extremely conservative, bare minimum estimate… likely closer to 20-25 hours…." [Doc. 170-12, pg. 5-6]. Thus, between responding to emails and texts, phones calls and the initial client meeting, Mr. Cohen estimates that he expended 19 hours and 40 minutes. He does not identify any specific legal work he did in those 19 plus hours. In other words, this was time interfacing with the client and answering her questions. He then spent 2 hours and 25 minutes on witness investigation, 1 hour 55 minutes on EEOC investigation, bringing his total time to 24 hours. He also indicates he spent six hours "[l]inking up with attorney Mikel," one hour on "various emails regarding future fees/calculations… [f]ee application: calculation and exhibit draft, editing, and comments by Atty. Mikel – 1 hr…[d]eclaration: 2/23/18 – 1 hr." [Doc. 170-12, pg. 6]. Attorney Cohen has indicated that these are conservative estimates he expended in the case. The Court has no reason to doubt that and no specific objection to his hours has been lodged by Defendant. The Court finds that his hours are reasonable for the time he expended on this case before the EEOC and his work in conjunction with attorney Mikel.

## D. Enhancement of 1.25 percent

In certain cases, the Court may adjust the lodestar upward or downward to arrive at the

appropriate fee award. *Hensley*, 461 U.S. at 434. "[A] party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S. Ct. 1662, 1669, 176 L. Ed. 2d 494 (2010). As the Supreme Court noted in *Perdue,* "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. *Id.* at 554.

Plaintiff requests a 1.25 enhancement apply given her extraordinary success and the uniqueness of the case. Novelty and complexity of the litigation are reflected in the lodestar and cannot be the basis for an upward adjustment in attorney's fees. See *Perdue v. Kenny A.,* 559 U.S. 542, 553, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) ("We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel."). The Supreme Court also noted that exceptional results or quality of representation are also reflected in the lodestar and are not generally a basis for enhancement. *Perdue*, 559 U.S. at 552-53; *Blum*, 465 U.S. at 899.

The Court also finds that an enhancement is also not appropriate based on the fact that Plaintiff's counsel bore the risk of potentially loosing. "[F]ederal fee shifting statutes do not provide for enhancements of fees in order to compensate for the risk of nonpayment when an attorney takes a case on a contingency basis." *Lapointe v. Midland Funding, LLC*, No. 2:15-CV-171, 2016 WL 3471317, at *2 (E.D. Tenn. June 20, 2016) citing *City of Burlington v. Dague*, 505 U.S. 557, 561-63 (1992).

The Supreme Court identified three situations where an enhancement may be appropriate: (1) where "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value" *id.* at 554-55; (2) where the attorney has expended an "extraordinary outlay of expenses and the litigation is exceptionally protracted" *id.*; (3) where there is an "exceptional delay in the payment of fees." *Id.* The Court has considered each of these factors and finds none is applicable here. The lodestar calculation adequately measures the market value of the services provided. There is no evidence of Plaintiff incurring an extraordinary amount of expenses to fund the litigation. Finally, there is no allegation of an exceptional delay in resolving this case or in the payment of fees.

Plaintiff argues that an enhancement is necessary to attract competent counsel to handle these types of cases. The Court does not find an upward adjustment necessary in this case given that the lodestar adequately addresses all of Plaintiff's concerns regarding attracting counsel with reasonable compensation to vindicate important civil rights of the individuals similarly situated as Plaintiff. Accordingly, the Court recommends the request for an enhancement be denied.

## IV. CONCLUSION

The Court RECOMMENDS the following be set as reasonable attorney's fees in this case:

| Attorney | Adjusted Hourly Rate | Total Hours Expended | Total Fee |
|---|---|---|---|
| Donna Mikel | $350.00 | 385.38 | $134,883.00 |
| Robert Wheeler | $175.00 | 141.261 | $24,720.68 |
| Douglas Hamill | $300.00 | 116.0 | $34,800.00 |
| Joel Cohen | $250.00 | 30.0 | $7,500.00 |
| Tammy Dickson (paralegal) | $90.00 | 82.3 | $7,407.00 |
| Krista Guinn | $75.00 | 23.5 | $1,762.50 |
| **Total** | | | **$211,073.18** |

In consideration of all the pleadings and the Court's understanding of the prevailing market rates for the services discussed herein, the Court RECOMMENDS that attorneys' fees be approved

in the amount of $211,073.18 and litigation costs of $6,980.49 (exclusive of the Bill of Costs already filed) be likewise approved.[10]

Respectfully Submitted,

s/Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[10]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).